## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HARKINS CONTRACTING, INC., | * | |
| *Plaintiff* | * | |
| v. | * | Civil Action No. RDB-24-886 |
| FRANKENMUTH INSURANCE CO., | * | |
| *Defendant.* | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### **MEMORANDUM OPINION**

Through the instant litigation, Plaintiff Harkins Contracting, Inc. ("Plaintiff" or "Harkins") alleges that Defendant Frankenmuth Insurance Company ("Defendant" or "Frankenmuth") breached its obligations under a performance bond. (ECF No. 2.)[1] Presently pending are (1) Defendant's Motion to Dismiss Complaint (ECF No. 5); and (2) Plaintiff's Motion for Leave to File a Surreply (ECF No. 21). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Plaintiff's Motion for Leave to File a Surreply (ECF No. 21) is GRANTED; and Defendant's Motion to Dismiss Complaint (ECF No. 5) is DENIED.

### **BACKGROUND[2]**

As background, Plaintiff Harkins Contracting, Inc. is a Maryland corporation with its

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

[2] Under either Federal Rule of Civil Procedure 12(b)(2) or (3), the court is permitted to consider evidence outside the pleadings in resolving the motion. *Silo Point II, LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008); *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763 (D. Md. 2009).

principal place of business in Salisbury, Maryland. (ECF No. 2 ¶ 2.) Defendant Frankenmuth Insurance Company is a Michigan corporation with its principal place of business in Frankenmuth, Michigan. (*Id.* ¶ 3.)

Sometime in April 2019, Harkins and Buas Sands Hotel, LLC ("Buas Sands") entered into a construction contract to construct the Fenwick Sands Tapestry Hotel in Fenwick Island, Delaware (the "Project"). (ECF No. 2 ¶ 3, at 6; *see also* ECF No. 21-2.) Sometime in late October/early November 2019, Harkins and Ocean Tower Construction Company, LLC ("Ocean Tower") entered into a subcontract wherein Ocean Tower agreed to perform certain work at the Project for a fixed price (the "Subcontract"). (ECF No. 2 ¶ 4, at 6–23; *see also* ECF No. 14-1.) Relevant to the instant dispute, the Subcontract reflected Maryland addresses for both Ocean Tower and Harkins.[3] (ECF No. 2 at 6.) The parties do not dispute that the Subcontract between Harkins and Ocean Tower is controlled by Delaware law. (*See* ECF Nos. 14 at 9 n.9; 17 at 5.)

To ensure the Ocean Tower's faithful performance of the Subcontract, Plaintiff required Ocean Tower to post a performance bond. (ECF No. 2 ¶ 5.) Accordingly, on January 17, 2020, Frankenmuth issued Performance Bond No. SUR2002488 (the "Performance Bond"), designating Ocean Tower as the principal and Harkins as the obligee. (*Id.* ¶ 5, at 24–26.) Relevant to the instant dispute, the Performance Bond also reflects Maryland addresses for both Ocean Tower and Harkins. The Performance Bond lists

---

[3] With its reply, Frankenmuth submits an exhibit that displays a Frankford, Delaware address for Harkins. (ECF No. 17 at 6; ECF No. 17-1 at 1.) The Court finds it prudent to note that immediately following this page, which is entitled "Subcontractor Checklist," the Subcontract displays the same Maryland addresses for both Harkins and Ocean Tower that were submitted as an exhibit with Plaintiff's Complaint. (*Compare* ECF No. 17-1 at 2 *with* ECF No. 2 at 6.)

"McGriff Insurance Services" as the "AGENT or BROKER," and includes a Columbia, Maryland address for McGriff Insurance. (*Id.* at 24; ECF No. 14-2.) Further relevant are paragraphs 1 and 9 of the Performance Bond. Paragraph 1 provides that: "The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference." (ECF No. 2 at 25.) In relevant part, paragraph 9 of the Performance Bond provides: "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located[.]" (*Id.*)

Through its Complaint, Harkins alleges that after the Project was concluded, Buas Sands alleged construction defects attributable to the work performed by Ocean Tower, which resulted in arbitration between Buas Sands and Harkins, with Harkins joining Ocean Tower. (*Id.* ¶¶ 7–8.) Ultimately, Harkins was awarded $790,302.00, less any unpaid Subcontract balance, for Ocean Tower's defective work on the Project. (*Id.* ¶¶ 9–11, at 27–31.)

On February 23, 2024, Harkins filed the instant lawsuit in the Circuit Court for Wicomico County, Maryland, alleging that Frankenmuth breached its obligations under the Performance Bond. (*Id.* ¶¶ 12–17.) On March 26, 2024, Frankenmuth removed this action to this Court based on diversity jurisdiction. (ECF No. 1.) Frankenmuth subsequently filed the pending Motion to Dismiss Complaint (ECF No. 5), asserting this Court lacks personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Alternatively, Frankenmuth moves for a transfer of this action to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1404. The motion

3

is fully briefed, including a surreply, (ECF Nos. 14 (Plaintiff's Response); 17 (Defendant's Reply); 21 (Plaintiff's Surreply (21-1)), and is ripe for review.

## STANDARD OF REVIEW

### I.    Motions to Dismiss Under Rule 12(b)(2)

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 489 (D. Md. 2015). While a court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Sigala*, 145 F. Supp. 3d at 489. If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294

n.5 (4th Cir. 2005).

## II.    Motions to Dismiss Under Rule 12(b)(3)

Pursuant to Rule 12 (b)(3) of the Federal Rules of Civil Procedure, a court may dismiss a case for improper venue. "In this circuit, when venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 679–80 (D. Md. 2010) (citing *Gov't of Egypt Procurement Off. v. M/V Robert E. Lee*, 216 F. Supp. 2d 468, 471 (D. Md. 2002)). Like a motion to dismiss for lack of personal jurisdiction, "in deciding a motion to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 454 (D. Md. 2005) (quoting *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 385 (D. Md. 2005)). In reviewing a motion to dismiss under Rule 12(b)(3), the Court may consider evidence outside the pleadings. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).

## III.    Motions for Transfer Pursuant to 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The movant bears the burden to demonstrate that transfer is proper. *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004). A district court has great discretion in determining whether to transfer a case under Section 1404(a), and the decision to transfer an action is guided by an "individualized, case-by-case consideration of

convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In deciding whether to transfer venue, the Court considers four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

## ANALYSIS

The Court first addresses Plaintiff's Motion (ECF No. 21) before turning to consider Defendant's Motion (ECF No. 5).

### I.    Harkins's Motion for Leave to File a Surreply (ECF No. 21)

In Frankenmuth's Reply (ECF No. 17), Defendant asserts that the arbitration provision in the Subcontract between Harkins and Ocean Tower mandated claims to be arbitrated "in the place where the Project is located," emphasizing that the Subcontract is incorporated into the Performance Bond.  (*Id.* at 7–8.)  Essentially, Frankenmuth argues that this provision of the Subcontract between Harkins and Ocean Tower supports its argument that Harkins's breach of contract claim arising from the Performance Bond must be litigated in Delaware, not Maryland.  (*Id.*)  In response, Plaintiff filed the pending Motion for Leave to File a Surreply (ECF No. 21) to clarify that the arbitration between Harkins, Buas Sands, and Ocean Tower was held in Fruitland, Maryland, pursuant to the agreement between Buas Sands and Harkins; and that the arbitration clause in the Subcontract between Harkins and Ocean Tower does not affect Frankenmuth's obligations under the Performance Bond.  (ECF No. 21-1 at 1–3.)

In general, parties are not permitted to file surreplies.  Local Rule 105.2(a) (D. Md.

2023) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). A surreply is permitted when the moving party would be unable to contest any matters raised by the opposing party in their reply for the first time. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). Because Frankenmuth raised this argument for the first time in its reply, Plaintiff's Motion for Leave to File a Surreply (ECF No. 21) is GRANTED. Accordingly, the surreply (ECF No. 21-1) is considered in tandem with the parties' other arguments below.

## II.    Frankenmuth's Motion to Dismiss Complaint (ECF No. 5)

Through Defendant's Motion to Dismiss Complaint (ECF No. 5), Frankenmuth argues that Plaintiff's Complaint (ECF No. 2) should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Rule 12(b)(3). Alternatively, Frankenmuth requests that this action be transferred to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a). The Court first considers Frankenmuth's challenge to personal jurisdiction and then venue, before turning to consider the request for transfer.

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). It is well settled that, "to assert personal jurisdiction over a nonresident defendant"— such as Frankenmuth—"two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must

comport with the due process requirements of the Fourteenth Amendment." *Id.*

### 1. Maryland's Long-Arm Statute

The Maryland long-arm statute authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citing *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 580 (Md. 2005)). Both the Supreme Court of Maryland and the United States Court of Appeals for the Fourth Circuit have held that it is not "permissible to simply dispense with analysis under the long-arm statute," *Pandit v. Pandit*, 808 F. App'x 179, 185 (4th Cir. 2020) (quoting *Mackey v. Compass Mktg.*, Inc., 892 A.2d 479, 493 n.6 (Md. 2006)). Instead, the "plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in his opposition to a Fed. R. Civ. P. 12(b)(2) motion." *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 247 (D. Md. 2022).

Harkins identifies sections 6-103(b)(1) and (6) of the Maryland Courts and Judicial Proceedings Code as the relevant long-arm statute provisions that confer jurisdiction over Frankenmuth. Those provisions state that:

> A court may exercise person jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > . . . or
> >
> > (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1), (6). The statute further provides that "[i]f

jurisdiction over a person is based solely upon [§ 6-103], he may be sued only on a cause of action arising from any act enumerated in [that] section." *Id.* § 6-103(a). Only one provision of the statute need be satisfied in order to assert jurisdiction. *Tate v. Blue Cross of Wash. & Alaska*, 474 A.2d 1353, 1359 (Md. App. 1984).

First, this Court is satisfied that Frankenmuth transacted business in Maryland within the contemplation of § 6-103(b)(1). Frankenmuth resists this by understating the extent to which the insurer does business in Maryland and emphasizing that the subject Project was located in Delaware. Since July 6, 2000, Frankenmuth has held a certificate of authority from the Maryland Insurance Commissioner, which allows Frankenmuth to engage in the insurance business in Maryland.[4] (ECF No. 14-3.) In 2021 and 2022, Frankenmuth received direct premiums written in Maryland in the amounts of $314,286 and $195,613, respectively. (ECF Nos. 14-4; 14-5.) More specific to the instant litigation, Frankenmuth contracted with Ocean Tower—a Maryland corporation—to serve as surety for the Subcontract executed in Maryland between Ocean Tower and Harkins—another Maryland corporation. The Performance Bond listed McGriff Insurance Services located in Columbia, Maryland as the "AGENT or BROKER," and Frankenmuth's website listed McGriff Insurance as one of Frankenmuth's independent agents to contact concerning surety bonds. (ECF No. 14-2.)

While Frankenmuth insists that mere contractual obligations are insufficient to

---

[4] In Maryland, insurance companies are classified as to their place of legal origin. Domestic insurers are those that are formed under the laws of Maryland, while foreign insurers—such as Frankenmuth—are formed under another state's laws. MD. CODE ANN., INS. § 6-101(m), (n). In addition to being classified as to place of origin, insurance companies are classified as "authorized" or "unauthorized." An authorized insurer "holds a valid certificate of authority." *Id.* § 6-101(g). An unauthorized insurer "does not hold a certificate of authority." *Id.* § 6-101(rr). In Maryland, a "certificate of authority" means that the Maryland Insurance Commissioner has granted the insurance company a certificate allowing it to "engage in the insurance business." *Id.* §§ 6-101(j); 4-101.

establish specific personal jurisdiction, the instant facts are quite dissimilar to the cases cited by Frankenmuth in support of its proposition.[5]  In *Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co.*, 617 A.2d 1125 (Md. 1993), the Supreme Court of Maryland[6] held that a one-transaction contract with a Maryland entity, coupled with "sufficient evidence of 'purposeful activity'" may constitute "transacting business" within the meaning of § 6-103(b)(1)).  *Id.* at 1129.  That standard is more than satisfied here.

With respect to section 6-103(b)(6), Frankenmuth deliberately engaged in activities in Maryland by issuing[7] the Performance Bond on behalf of Ocean Tower—a Maryland corporation—through McGriff Insurance Services—one of Frankenmuth's agents located in Maryland—for the benefit of Plaintiff—a Maryland corporation—related to the underlying Subcontract, which was executed in Maryland.  (ECF No. 2 at 6–23, 24–26; ECF No. 14-2.)  Accordingly, Frankenmuth is also subject to jurisdiction under Section 6-103(b)(6).

## 2. Due Process

The Supreme Court has long held that personal jurisdiction over a nonresident

---

[5]  *See Cape v. von Maur*, 932 F. Supp. 124, 128 (D. Md. 1995) (holding that correspondence and phone calls from out-of-state defendants to in-state plaintiffs, without more, are insufficient as a matter of law to establish the minimum contacts that satisfy due process); *Autoscribe Corp. v. Goldman*, No. 94-1749, 1995 U.S. App. LEXIS 2848, at *17–18 (4th Cir. 1995) (rejecting the Maryland corporation plaintiff's argument that the New Jersey corporation defendant—which had no Maryland employees or clients and which was not licensed to do business in Maryland—created "substantial connections" to Maryland by entering into a contract with the plaintiff, remitting payment to Maryland for software, and for making calls to Maryland for assistance in using the software); *Aphena Pharma Solutions-Maryland LLC v. Biozone Laboratories, Inc.*, 912 F. Supp. 2d 309, 315–16 (D. Md. 2012) (finding no personal jurisdiction over individual defendant under § 6-103(b)(1) where plaintiff alleged that the individual defendant's contacts with plaintiff's personnel in Maryland were sufficient to constitute transacting business within the state).
[6]  At the time of *Jason Pharmaceuticals*, the Supreme Court of Maryland was named the "Court of Appeals of Maryland."  At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Supreme Court of Maryland."  The name change took effect on December 14, 2022.
[7]  Through its reply, Frankenmuth appears to dispute the issuance of the Performance Bond.  (*See* ECF No. 17 at 6.)  The Court need not address this argument at this stage.

defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). The "constitutional touchstone" of personal jurisdiction is that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted).

Courts have separated the analysis into individual "prongs." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Courts first ascertain whether the threshold of "minimum contacts" is met, and then consider whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *Id.*

Due process jurisprudence recognizes two types of personal jurisdiction: general and specific jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). Plaintiff appears to concede that the Court lacks general jurisdiction over Frankenmuth. (ECF No. 14 at 5 ("Whether jurisdiction arises out of the issuance of a bond is a question of specific jurisdiction.").)

Specific jurisdiction exists where the "the suit arise[s] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted) (alterations in original). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes

place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (alterations in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919(2011)).

Moreover, the "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (citation omitted). In other words, the contacts must "show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (citations omitted; alterations in *Ford Motor Co.*).

"For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). However, in *Ford Motor Co.*, the Supreme Court rejected a "causation-only approach," as specific personal jurisdiction may be established without "a causal showing," so long as there is a "strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor Co.*, 592 U.S. at 361, 365.

The Fourth Circuit has formulated a three-part test to determine whether there is specific jurisdiction over a defendant. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan*, 293 F.3d at 712).

The first prong "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business

under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278.  In determining whether the defendant has engaged in purposeful availment of a state, courts consider various nonexclusive factors:

> (1) whether the defendant maintains offices or agents in the forum state, (2) owns property in the forum state, (3) reached into the forum state to solicit or initiate business, (4) deliberately engaged in significant or long-term business activities in the forum state, and (5) made in-person contact with the resident of the forum in the forum state regarding the business relationship; (6) whether the parties contractually agreed that the law of the forum state would govern disputes; (7) the nature, quality[,] and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Id.*

Making all reasonable inferences in favor of Plaintiff, Frankenmuth engaged in significant business activities in Maryland.  *See Carefirst*, 334 F.3d at 386.  As discussed, Frankenmuth contracted to act as surety for a Subcontract executed in Maryland between Maryland corporations, related to the Project located in Delaware.  While it is not alleged that Frankenmuth initiated the relationship with Ocean Tower and Harkins, Frankenmuth was not lured unwittingly into Maryland.  Rather, Frankenmuth has been licensed to issue insurance in Maryland since 2000.  (ECF No. 14-3.)  Harkins asserts, without opposition, that the agent/broker for the Performance Bond was McGriff Insurance Services located in Columbia, Maryland, and Frankenmuth's website listed McGriff Insurance as one of Frankenmuth's independent agents to contact concerning surety bonds.  (ECF No. 14-2.)  While paragraph 9 of the Performance Bond provides: "Any proceeding, legal or equitable, under this Bond *may* be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located," (ECF No. 2 at 25 (emphasis added)), the Court understands this

language as permissive but not mandatory, as further discussed under its 28 U.S.C. § 1404(a) analysis in Section II.B *infra*.

The second prong asks whether the plaintiff's claims arise out of those activities directed at the State. *See Consulting Eng'rs*, 561 F.3d at 278. While Frankenmuth makes much of the fact that the Project itself was located in Delaware, Frankenmuth issued the related Performance Bond designating Ocean Tower—a Maryland corporation with its principal place of business in Maryland, (ECF Nos. 14-7; 14-8)—as the principal; and Harkins—a Maryland corporation with its principal place of business in Maryland—as the obligee. Simply stated, and assuming arguendo that Delaware might be a suitable jurisdiction for the case based on the circumstances, the fact that the subject Project was located in Delaware does not, by itself, obligate Harkins to file a lawsuit there.

The third and final prong asks whether exercising jurisdiction would be constitutionally reasonable. Frankenmuth—a national corporation—would face little burden defending a lawsuit in Maryland. Harkins alleges that Frankenmuth "sells surety insurance, as that term is defined in [Md. Code Ann., Ins. § 1-101] and is a licensed and approved insurer in the State of Maryland." (ECF No. 2 ¶ 2.) Additionally, Frankenmuth is quite familiar with the laws of this jurisdiction, having been licensed to provide insurance services to Marylanders since 2000, and having received direct premiums written in Maryland in the amounts of $314,286 and $195,613 in 2021 and 2022, respectively. (ECF Nos. 14-3; 14-4; 14-5.) Accordingly, the exercise of jurisdiction over Frankenmuth is constitutionally reasonable.

As this Court has personal jurisdiction over Frankenmuth, Defendant's challenge pursuant to Fed. R. Civ. P. 12(b)(2) is DENIED.

**B. Venue**

When jurisdiction is based on diversity, venue is proper in a district "in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(a)(2).  Under Fed. R. Civ. P. 12(b)(3), a complaint may be dismissed for improper venue.  In considering such a motion, courts must "review the entire sequence of events" underlying the claims.  *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008).  It is sufficient that a substantial part of the events occurred in a district, "even if a greater part of the events occurred elsewhere."  *Id.*  All inferences must be drawn in the plaintiff's favor, and "the facts must be viewed as [it] most strongly can plead them."  *Silo Point II, LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008).

In moving to dismiss for improper venue, Frankenmuth argues[8] that the "only connection" this case has to Maryland "is that it issued the Subject Bond where obligee [Harkins] was a Maryland resident for a project located in the state of Delaware." (ECF No. 5-1 at 8.)  While it is true that the Project was located in Delaware, Frankenmuth contracted with Ocean Tower—a Maryland corporation—to serve as surety for the Subcontract executed in Maryland between Ocean Tower and Harkins—another Maryland corporation.  Thus, substantial events giving rise to Harkins's claim occurred in this District.  Accordingly, Frankenmuth's challenge pursuant to Fed. R. Civ. P. 12(b)(3) is DENIED.

---

[8] While Frankenmuth's filings focus on the forum selection clause in paragraph 9 of the Performance Bond, Fed. R. Civ. P. 12(b)(3) is not the proper mechanism to enforce such a clause.  Rather, 28 U.S.C. § 1404(a) is the appropriate provision to enforce such a clause.  *Atl. Marine Constr. Co. v. United States District Court*, 571 U.S. 49, 55–56, 60, 62 (2013).  Accordingly, paragraph 9 is discussed under Section II.B *infra*.

### C. Transfer

Through its Motion, Frankenmuth—a Michigan corporation with its principal place of business in Frankenmuth, Michigan—alternatively moves to transfer this case to the District of Delaware. (ECF No. 5-1 at 9–11.) Frankenmuth's argument largely focuses on paragraph 9 of the Performance Bond, which provides in relevant part: "Any proceeding, legal or equitable, under this Bond *may* be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located[.]" (ECF No. 2 at 25 (emphasis added).) A valid forum selection clause may be enforced through 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. United States District Court*, 571 U.S. 49, 60 (2013).

A forum selection clause may be characterized as either mandatory or permissive. A mandatory forum selection clause is one that "requires litigation to occur in a specified forum," while a permissive forum selection clause "permits litigation to occur in a specified forum but does not bar litigation elsewhere." *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018) (citation omitted). A mandatory forum selection clause creates a "presumption of enforceability" that is overcome only if enforcement would be "unreasonable." *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Where the clause is found to be permissive, however, the presumption in favor of enforceability disappears. *Id.* at 472. If the court determines the clause is permissive, it analyzes the clause's language under the traditional *forum non conveniens* analysis. *Id.* But if the clause is mandatory, the court uses the modified framework outlined in *Atlantic Marine*. 571 U.S. at 63.

Thus, the first question before the Court is whether the forum selection clause is

mandatory. It is not. "A general maxim in interpreting forum selection clauses is that an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007). Because paragraph 9 does not include specific language excluding other jurisdictions, but rather provides that claims *may* be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located, the clause is merely permissive.

Because the Court has determined that paragraph 9 of the Performance Bond is permissive, it will analyze the clause's language under the traditional *forum non conveniens* analysis. *BAE Sys.*, 884 F.3d at 472. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" As the moving party, Frankenmuth has the burden to show that transfer to its proposed alternative forum—the District of Delaware—is more convenient in light of the public and private interests involved. *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800–01 (4th Cir. 2013). "The decision whether to transfer is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008).

The Court denies the motion to transfer venue, as Frankenmuth has not established that the District of Delaware is more convenient in light of the public and private interests involved. *DiFederico*, 714 F.3d at 800–01. First, a plaintiff's choice of forum is ordinarily accorded considerable weight. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Harkins—a Maryland corporation with its

principal place of business in Salisbury, Maryland—opted to file its Complaint in Maryland state court. (ECF Nos. 1, 2.) Second, Frankenmuth has not established that convenience of the witnesses or parties justifies transfer to Delaware. Defendant has not identified any potential witnesses, and due to the relative closeness of the transferor (Baltimore) and transferee (Wilmington) forums, neither party would be greatly inconvenienced if the litigation were to continue in either jurisdiction. Consideration of the interests of justice includes, among other things, "the court's familiarity with applicable law." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 618 (D. Md. 2002). Frankenmuth insists that the Performance Bond—like the Subcontract—is controlled by Delaware law. Even assuming this is true, the potential application of Delaware law does not present a problem, as "the nature of federal practice requires the Court to routinely interpret laws from jurisdictions across the nation." *Doka USA, Ltd. v. Gateway Project Mgmt., LLC*, No. WDQ-10-1896, 2011 U.S. Dist. LEXIS 82380, at *35 (D. Md. July 25, 2011) (citation omitted).

On balance, Frankenmuth has not met its burden to show that transfer to the District of Delaware would be proper. Accordingly, Frankenmuth's motion to transfer venue is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Complaint (ECF No. 5) is DENIED; and Plaintiff's Motion for Leave to File a Surreply (ECF No. 21) is GRANTED.

A separate Order follows.

Date: February 27, 2025                          _____/s/_____

                                                 Richard D. Bennett
                                                 United States Senior District Judge